IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-660

Filed 20 February 2024

Guilford County, No. 22CVS6227

JOHN LONGPHRE AND KAORI LONGPHRE, Plaintiffs,

v.

KT FINANCIAL, LLC, Defendant.

Appeal by defendant from judgment entered 24 January 2023 by Judge Lora C. Cubbage in Guilford County Superior Court. Heard in the Court of Appeals 24 January 2024.

> *Fox Rothschild LLP, by Troy D. Shelton, for the plaintiffs-cross-appellants/appellees.*
>
> *Vann Attorneys, PLLC, by James R. Vann, and Ian S. Richardson, for the plaintiffs-cross-appellants/appellees.*
>
> *Rossabi Law Partners, by Gavin J. Reardon, and Amiel J. Rossabi, for the defendant-appellant/cross-appellee.*

TYSON, Judge.

John Longphre and Kaori Longphre (collectively "Longphres") loaned KT Financial, LLC ("KT Financial") $330,000 secured by two separate promissory notes. KT Financial appeals the portion of the trial court's order granting the Longphres attorney's fees for legal services incurred while collecting on KT Financial's outstanding debt. The Longphres cross appeal the portion of the trial court's order,

which reduced the interest KT Financial owed the Longphres. We affirm.

## I. Background

The Longphres loaned KT Financial $230,000 secured by a promissory note ("Note One") executed on 7 April 2020. Approximately one month later, the Longphres loaned an additional $100,000 to KT Financial on 1 May 2020 ("Note Two"). KT Financial also pledged two properties as collateral for both loans.

The terms of both promissory notes are the same. The interest due for both promissory notes was thirty percent (30%) per annum, and the notes specified "[a]ll accrued interest and unpaid principal" was due one year after the notes were executed. The notes also empowered the Longphres to collect attorney's fees if legal proceedings were instituted to collect on the accounts.

KT Financial failed to make any payments on the balances of either loan by their respective due dates. The Longphres sent a letter to KT Financial on 24 June 2022 and demanded $382,556.16 for the principal amount plus accrued interest on Note One and $164,356.16 for the principal amount plus accrued interest on Note Two. The letter provided: "Unless you pay within five (5) days from the date of this letter, you will be liable for attorneys' fees pursuant to North Carolina General Statute § 6-21.2." The letter explained the Longphres would seek attorney's fees of $57,383.42 for Note One and $24,753.42 for Note Two.

KT Financial failed to make any payments to the Longphres for either note. The Longphres filed a complaint against KT Financial on 18 July 2022, seeking

collection of both promissory notes with interest and attorney's fees.  The Longphres filed a Rule 12(c) Motion for Judgment on Pleadings on 30 September 2022.

A hearing was held on 9 January 2023.  The Longphres' motion was "granted in part and denied in part" on 24 January 2023.  At the hearing, KT Financial argued both notes were interest free for the first year, which was supported by several provisions in the promissory notes.  The trial court agreed with KT Financial and recalculated the interest for both notes as accruing after 1 May 2021.  The interest KT Financial owed was reduced to $120,156.16, which was a $96,756.16 reduction from the $216,912.32 interest quoted in the demand letter the Longphres had sent to KT Financial.  The trial court also awarded the Longphres $67,523.42 in attorney's fees pursuant to the fifteen percent rate established in N.C. Gen. Stat. § 6-21.2 (2023).

KT Financial entered a notice of appeal from the trial court's award of attorney's fees on 20 February 2023.  The Longphres filed a notice of cross-appeal on 21 February 2023 regarding the portions of the order outlining the interest calculations.

## II.    Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2023).

## III.    Issues

The Longphres argue the trial court erred by calculating interest beginning on 1 May 2021 instead of from the day both notes were issued.  KT Financial appeals the trial court's award of attorney's fees to the Longphres pursuant to N.C. Gen. Stat.

§ 6-21.2 (2023).

### IV.    Contract Interpretation – Interest Calculation

The Longphres argue the trial court erred by holding interest began to accrue for each note one year after proceeds were disbursed.  They assert the language in the contract providing "[a]ll accrued interest and unpaid principal shall be paid in full on or before" one year after the funds were disbursed indicate interest began accruing the day the loan proceeds were disbursed.

KT Financial argues the contract, when read as a whole, and the Longphres' actions after the funds were disbursed indicate the loan was interest free for one year.  More specifically, KT Financial cites the following characteristics as proof the parties intended for interest to accrue one year after the funds were disbursed: (1) neither of the promissory notes provided a date on which interest shall begin to accrue; (2) no periodic payments were required before the note was due in full; (3) the notes included an acceleration clause; (4) neither note provided interest was due until the note was paid in full; (5) neither note provided any variation in the interest rate depending upon when the loan reached the maturity date or if payment on the notes defaulted; (6) the notes were each secured by multiple parcels of real property; and, (7) a thirty percent interest rate is astronomical unless the first  year is interest free.  Essentially, KT Financial argues each party gambled on time and certain outcomes.  KT Financial gambled they could repay both notes in the first year before the thirty percent interest rate began to accrue.  The Longphres gambled KT Financial would be unable to repay

the loan in the first year, and the thirty percent interest rate would accrue.

## A. Standard of Review

"We review de novo the trial court's order granting judgment on the pleadings." *Old Republic Nat'l Title Ins. Co. v. Hartford Fire Ins. Co.*, 369 N.C. 500, 507, 797 S.E.2d 264, 269 (2017) (citation omitted).

## B. Analysis

"A contract which is plain and unambiguous on its face will be interpreted as a matter of law by the court." *Dept. of Transportation v. Idol*, 114 N.C. App. 98, 100, 440 S.E.2d 863, 864 (1994) (citation omitted).

"A contract term is ambiguous only when, 'in the opinion of the court, the language of the [contract] is fairly and reasonably susceptible to either of the constructions for which the parties contend.'" *State v. Philip Morris USA Inc.*, 363 N.C. 623, 641, 685 S.E.2d 85, 96 (2009) (first quoting *Wachovia Bank & Tr.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970) (citation omitted); then citing *Walton v. City of Raleigh*, 342 N.C. 879, 881-82, 467 S.E.2d 410, 412 (1996) ("Parties can differ as to the interpretation of language without its being ambiguous . . . .")).

"If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton*, 342 N.C. at 881, 467 S.E.2d at 411 (citation omitted).

"[R]ules of construction are used to interpret ambiguities in contracts. They are not used to rewrite provisions to fit the needs of a litigant. Where a provision in

an agreement . . . is clear and unambiguous on its face, there is no need to apply rules of construction." *Beachcrete, Inc. v. Water St. Ctr. Assocs., L.L.C.*, 172 N.C. App. 156, 160, 615 S.E.2d 719, 722 (2005) (citation omitted).

Our general statutes provide guidance for the time from which interest accrues, if a promissory note is silent regarding when interest commences: "(1) All bonds, bills, notes, bills of exchange, liquidated and settled accounts shall bear interest *from the time they become due* . . . unless it is specially expressed that interest is not to accrue until a time mentioned in the said writings or securities." N.C. Gen. Stat. § 24-3(1) (2023) (emphasis supplied).

While the Longphres argue the default rules of the Uniform Commercial Code ("UCC") should apply, the record is devoid of any information indicating whether the contract involved the sale of goods, nor does either promissory note mention the UCC. *See* N.C. Gen. Stat. § 25-2-102 (2023) (explaining the UCC only applies "to transactions in goods"); *Haywood Street Redevelopment Corp. v. Peterson Co.*, 120 N.C. App. 832, 837, 463 S.E.2d 564, 567 (1995) (explaining "[t]his case is not, however, governed by the UCC" and then quoting N.C. Gen. Stat. § 25-2-102). Further, the Longphres failed to raise or argue at trial that the UCC applied, and any argument that the UCC applies is not preserved for appeal. N.C. R. App. P. 10(a).

Here, the trial court found, and we agree, the terms of the contract are not ambiguous. *See Philip Morris*, 363 N.C. at 641, 685 S.E.2d at 96; *Walton*, 342 N.C. at 881, 467 S.E.2d at 411; *Beachcrete*, 172 N.C. App. at 160, 615 S.E.2d at 722.

KT Financial asserted before the trial court: "It says accruing interest, but it does not say when the accruing interest actually starts. The word is 'accruing interest,' and you have to say accruing interest from this date or from thirty days from now or whenever." In the absence of any specified accrual date, N.C. Gen. Stat. § 24-3(1) applies and interest accrues *"from the time they become due."* N.C. Gen. Stat. § 24-3(1).

This reading of the contract is further supported by the Longphres' failure to seek repayment until 24 June 2022, approximately two years after the funds were disbursed and one year after payment was due. Further, both promissory notes explain the due dates for each loan occur one year *after* the funds were disbursed, providing "[a]ll accrued interest and unpaid principal shall be paid in full on or before [one year]."

If the Longphres intended for interest to accrue immediately after the loan was disbursed, i.e., throughout the year before payments were due, the notes should have specified the date interest would begin to accrue. *See* N.C. Gen. Stat. § 24-3(1). The trial court did not err as a matter of law by failing to include interest for each note for the first year before repayment was due. *See Idol*, 114 N.C. App. at 100, 440 S.E.2d at 864. The trial court's order on this issue is affirmed.

## V.   Attorney's Fees

KT Financial argues the trial court erred by awarding the Longphres fifteen percent in attorney's fees based upon the newly calculated outstanding balance.

## A. Standard of Review

"[R]easonableness is the key factor under all attorney's fees statutes." *Institution Food House v. Circus Hall of Cream*, 107 N.C. App. 552, 558, 421 S.E.2d 370, 374 (1992) (citation omitted).

## B. Analysis

"A formal credit agreement executed by the parties prior to the establishment of an open account is evidence of indebtedness; and if such an agreement contains a provision for attorney's fees it will be legally enforceable pursuant to G.S. 6-21.2." *W.S. Clark & Sons, Inc. v. Ruiz*, 87 N.C. App. 420, 422, 360 S.E.2d 814, 816 (1987) (citation omitted).

N.C. Gen. Stat. § 6-21.2 provides guidance for assessing attorney's fees, in addition to interest, on uncollected notes :

> Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, . . . subject to the following provisions:
>
> . . .
>
> (2) If such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note, contract or other evidence of indebtedness.

N.C. Gen. Stat. § 6-21.2 (2023).

The statute further provides five days' prior notice must be provided to the "party sought to be held on said obligation." N.C. Gen. Stat. § 6-21.2(5) (2023). The notice must include the outstanding balance and explain the "party sought to be held on said obligation has five days from the mailing of such notice to pay the 'outstanding balance' without the attorneys' fees." *Id.*

Here, the Longphres sent the required five days' prior notice to KT Financial regarding their outstanding balances, complying with N.C. Gen. Stat. § 6-21.2(5). The Longphres' trial attorney also prepared and submitted before the trial court an affidavit listing his attorney's fees and citing the fifteen percent statutorily-based attorney's fee set out in N.C. Gen. Stat. § 6-21.2(2). The fifteen percent attorney's fees the trial court assessed do not exceed the statutory basis for attorney's fees and were calculated as a percentage of the reduced outstanding balance KT Financial owed to the Longphres. N.C. Gen. Stat. § 6-21.2(2)-(3). KT Financial's argument is without merit and overruled.

## VI.    Conclusion

The trial court properly applied N.C. Gen. Stat. § 24-3(1) regarding the interest accrual date for the notes. The trial court properly assessed attorney's fees against KT Financial according to N.C. Gen. Stat. § 6-21.2(2), after the Longphres had provided the requisite prior statutory notice, and properly calculated the attorney's fees as fifteen percent of the reduced outstanding balance KT Financial owed to the Longphres. N.C. Gen. Stat. § 24-3(1)-(2). The order appealed from is affirmed. *It is*

*so ordered.*

AFFIRMED.

Judges WOOD and STADING concur.